UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

# MOTION FOR RECONSIDERATION/MOTION FOR INDEPENDENT ACTION INCLUSIVE OF NINE EXHIBITS

SUZANNE MERSEREAU SEARLES,
Plaintiff *pro se in forma pauperis*
v.
WEST HARTFORD BOARD OF EDUCATION, *ET AL.*, Defendants

CIVIL NUMBERS 2:90 cv 626 (PCD)
3:97 cv 2601 (PCD)
3:00 cv 1115 (PCD)

FILED
2006 MAY 22 A 10: 23

Submitted by-
Suzanne Mersereau Searles,
*pro se ifp*
45 Whispering Pines Road
Avon, CT 06001
860-674-0617

ORAL ARGUMENT NOT REQUESTED

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SUZANNE MERSEREAU SEARLES,
Plaintiff pro se in forma pauperis
v.
WEST HARTFORD BOARD OF EDUCATION, et al., Defendants

CIVIL NO. 2:90cv 626 (PCD)
3:97cv 2601 (PCD)
3:00cv 1115 (PCD)

MAY 17, 2006

MOTION FOR RECONSIDERATION/MOTION FOR INDEPENDENT ACTION

"Judgments obtained by fraud have long been vulnerable to attack in an independent action." (Publicker v. Shallcross, 106 F.2d 949 (3d Cir. 1939) "In an independent action a majority of courts limit relief from fraudulently procured judgments to situations involving extrinsic fraud." (U.S. v. Throckmorton, 98 U.S. 61 (1878) "This type of fraud is present where the aggravated party has been prevented from adequately presenting his claim because of some fraud practiced directly upon him by the adverse party." (Iowa Law Review, Vol. 48, 1962-63, pp. 398-409, Exhibit 1) As this District Court well knows, the dichotomy of extrinsic and intrinsic fraud has been eliminated. (Exh. 1, p. 401) Moreover, landmark case Marshall v. Holmes, 141 U.S. 589, 596 (1891) mandates that "relief be granted where against conscience to let judgment stand." (Exh. 1 p. 398)

"Federal Rule of Civil Procedure 60(b) is a codification of the practice in respect to the correction of judgments after the time period for appeal has expired." (Barron and Holtzoff's Federal Practice and Procedure Sec. 1321) Moreover, Mr. Justice Black observed in Klapprott v. United States, 335 U.S. 601 (1949) that the language of Federal Rule 60(b)(6) "vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." (Exh. 1, pp. 401-402) Id. at 615. See Comment, 17 U. Chi. L. Rev. 664, 671 (1950); Note, 61 Yale L.J. 76, 81 (1952). Rule 60(b)(6) has been argued to this court numerous times but has been peremptorily ignored. (Exh. 2) "Rule 60 (b)(6) is a 'catch-all' provision that expressly allows the court to intervene for 'any other reason justifying relief from the operation of the judgment.'" (Exh. 1, p. 401)

Exh. 1, p. 401, footnote 24 states as follows:

> Fed. R. Civ. P. 60(b)(6). See e.g. Sternstein v. "Italia"-Societa Per Azioni Di Navigazione-Genoa, 275 F. 2d 502 (2d Cir. 1960)(per curiam) ... The court in Pierre v. Bernuth Lembcke Co., 20 F.R.D. 116 (S.D.N.Y. 1956), pointed out that Rule 60 (b)(6) is 'a grand reservoir of equitable power to do justice in a particular case.' Id. at 117.

Exhibit 1, p. 402, definitively defines "C. Saving Provisions, 1. Fraud Upon The Court." Therein, Professor of Law at Yale Law School Moore and co-author Rogers of Federal Relief From Civil Judgments, 55 Yale L.J. 623, 658 (1946), define "fraud upon the Court" as "that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task ...." Exh. 1 continues, "The leading case dealing with this problem is Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)(3rd Cir.) "After ten years had elapsed, the fraud was discovered and petitioner sued to have the judgment set aside. Mr. Justice Black, speaking for the Court, pointed out that the fraud was a deliberately planned and carefully executed scheme to defraud not only the patent office, but the court of appeals as well." 322 U.S. at 250. Consequently, the Supreme Court ruled that the use of the article was a 'fraud upon the court' and the decree was set aside." (emphasis added)

In her January 19, 2006 "Motion To Reopen And For Relief From Judgment" Plaintiff argues for F.R.C.P. 60(b)(6) protection as did Justice Learned Hand in United States v. Karahalias at USCA II after a seventeen year 'hiatus' due to "forcible obstacles imposed" on Appellee's defense. (emphasis added) The instant Plaintiff has pleaded same for sixteen years in 2:90cv 626, for nine years in 3:97cv 2601, and for six years in 3:00 cv 1115. "Forcible obstacles imposed" include fraudulent cessation of salary in 1987, perjurious testimony before a state-mandated arbitration tribunal in 1988-1990, slanderous remarks conveyed to local police re- Plaintiff's kindness in return of a bookroom key in 1991, Defendant Schulman's physical attack upon Plaintiff in 1994, foreclosure upon Plaintiff's home in 1995-1997, and three surgeries in 1995, 1997, and 2003 necessitated by the physical assault aforementioned. The foregoing are

in addition to worker's compensation proceedings throughout the 1990's and bankruptcy litigation in a futile attempt to save Plaintiff's home from fraudulent foreclosure which transpired as she recuperated in a local nursing facility from corrective brain surgery necessitated by the aforementioned battery. Defendants, unsatisfied with arbitration tribunal's finding that Plaintiff was not "insubordinate" while teaching in their employ resorted to egregious tactics to indeed render her "physically disabled permanently." Other than seven weeks post the November 17, 1997 brain surgery of "legal blindness" she has again recovered as sequestered-by-Defendants' medical evaluations/assessments prove. Surviving on federal student loan moneys at Dartmouth College in New Hampshire, she earned a Master of Arts in Liberal Studies degree conferred in June 1997 with concentrations in British literature and neuroscience (Exhibits 3, 4, 5, and 6) in spite of the emergence of two new cerebral aneurysms subsequent to the Schulman attack. As stated on p. 408 of Exh. 1, "In an independent action, the basis for setting aside a decree obtained by fraud is that it would be unconscionable to allow a wrongdoer the opportunity to retain the fruits of his fraud." ("See Marshall v. Holmes, 141 U.S. 589 (1891); Publicker v. Shallcross, 106 F.2d 949 (3d Cir.), cert. denied, 308 U.S. 624 (1939); Ala. L. Rev. 224 (1951)." As stated by Plaintiff on pp. 6-7 of her August 7, 1996 "Independent Action For Fraud Upon The Court" in Case 2:90cv 626 (PCD):

> On a trial by the court without a jury, error in excluding competent evidence will be regarded as harmless...unless there was evidence excluded which should have been admitted, and which, if admitted and viewed in its most favorable light, would have justified and required a different conclusion.
>
> Corpus Juris Secundum, Vol. 5A, pp. 1086-7 (emphasis added)

The foregoing mandate and the next one once again remind this Court of its Seventh Amendment to the US Constitution mandate to guarantee plaintiff a right to a jury trial, First Amendment mandate re- plaintiff's right to petition the courts for redress of grievances, and Fifth Amendment mandate re-guarantee to plaintiff of a right to due process under the law.

> ...judges possess professional experience in valuing evidence greatly lessening the need for exclusionary rules. The feeling of the inexpediency of the restrictions as applied to judges has caused courts to say that the same strictness will not be observed in applying the rules of evidence in judge only trials as in trials before a jury, and it is difficult to avoid reaching the same result under the Federal and Revised Uniform Rule of Evidence (1974).
>
> The most important influence in encouraging trial judges to take this attitude toward evidence rules in nonjury cases is a rule obtaining in most appellate courts. These courts have said that in reviewing a case tried without a jury the admission of inadmissible evidence over objection will not ordinarily be a ground of reversal if there was admissible evidence sufficient to support the findings. The judge will be presumed to have disregarded the inadmissible and relied on the admissible evidence. If the judge errs, however, in the opposite direction, by excluding evidence which ought to have been received, the judge's ruling will of course be subject to reversal if it is substantially harmful to the losing party.

McCormick on Evidence, Fourth Edition, Vol. 1, 1992, pp. 238-9

(emphasis added)

Judge Dorsey will remember, of course, that voluminous evidence of superb teaching/instructional expertise, Exhibits 7, 8, and of excellent health prognosis submitted with the original complaint of July 23, 1990 fell victim to Defendants' Motion For Summary Judgment of spring 1991 absent opposition from Plaintiff's corrupt, incompetent then attorney. This Court would not even honor Plaintiff pro se's May 29, 1992 "Rebuttal of Defendants' Reply Memorandum in Support of Their Motion for Summary Judgment" replete with forty-one exhibits in addition to the one hundred sixty-seven exhibits submitted with the July 1990 "Original Complaint" of Plaintiff pro se ifp. As stated on p. 1 of her May 9, 2006 "Motion For Extension Of Time, "In all three of the aforementioned cases this court failed to rule judiciously inclusive of all exhibits probative of Defendant fraud. Furthermore,

F.R.C.P. 60(b)(6) has been argued and pleaded by Plaintiff for sixteen years and counting. The court erroneously quotes Rule 60(b) with omission - egregious omission - of the tenets of Rule 60(b)(6). The court has thrice ruled for appointment of counsel for this Plaintiff but has never honored its word." Likewise injudicious to this day is the Court's denial of certified receipt of the two October 20, 2000 U.S. Department of Justice, Civil Rights Division, Employment Litigation Section "Notice Of Right To Sue" letters.

By way of conclusion to this "Motion For Reconsideration/ Motion For Independent Action" Plaintiff submits as Exhibit 9 "Claimant's Brief" of February 26, 2001, pp. 1-11, to the Workers' Compensation Commission hearing officer who likewise ruled injudiciously. Superintendent of Schools Lloyd Calvert's words of p. 4 bear repeating:

> ...In no way are we saying this is not an excellent teacher. In no way are saying that we must not over a period of time take into account this teacher's interest or preferred interest in teaching at the high school level. What we are saying is we can not do it for 1986-87...
>
> It does not mean that she is not a highly qualified teacher, we recognize that. It does not mean that her interest in teaching at the high school level will be ignored. It will not. It must not...
>
> I do not know for a fact but we have here a person of considerable integrity...If there is anything for which this party might hold us culpable in the future it would be were we to ignore her interest when the opportunity presented itself...
>
> July 21, 1986 minutes of grievance
>
> (emphasis added)

Plaintiff does indeed hold Defendants in toto culpable.

Exhibit 2, 15 ALR Fed "Relief From Final Judgment," Sec. 11 "Effect of disability or absence" is argued forcefully on pp. 1-2 of Plaintiff's September 11, 2004 "Addendum To Motion To Transfer To Original Venue And For Relief From Judgment" just as it is in her instant "Motion To Reopen And For Relief From Judgment," on pp. 1-4. "Extraordinary circumstances" justifying relief, Sec. 5, cites Klapprott v. United States (1949) 335 US 601, 93 L Ed 266, 69 S Ct 384 as emblematic of a "weakened and impoverished by illness" plaintiff/litigant "without means to hire a lawyer" just

as has been this Plaintiff pro se in forma pauperis because of Defendant-inflicted-injuries as discussed supra. Relief under Rule 60(b)(6) was granted Klapprott:

> Therefore, having concluded that Klapprott's prayer for relief should be considered under the "other reason" clause because of the "extraordinary situation" revealed, the Supreme Court said that it thus came to the question whether Klapprott's allegations showed facts "justifying relief from the operation of the judgment," and held that they did...The court observed that all petitioner had asked was that the default judgment be set aside so that for the first time he might defend on the merits; that he was entitled to a fair trial, which he had not had; and that the language of the "other reason" clause of Rule 60(b)(6) was broad enough to authorize the court to set aside the default judgment and grant petitioner a fair hearing...
>
> 15 ALR Fed pp. 218-219
> (emphasis added)

The underlined words supra likewise stand analogous to this plaintiff's prayer for relief from sixteen-year denial of "a fair trial" to "defend on the merits" her interrelated/conjoined extraordinary cases. (Exh. 3, 4, 5, 6, 7, 8, 9, and the totality of motions, pleadings, and more bona fide exhibits in Case Numbers 2:90cv626 (PCD), 3:97cv2601 (PCD), and 3:00cv1115 (PCD).

Exhibit 2, USCS Lawyers' Edition, USCS Court Rules of Civil Procedure, Rules 60-End, 1987, comprises many more citations/"Notes"/ memoranda of law regarding "Relief From Judgment" per Rule 60(b)(6). For example, highly contiguous to the instant cases is "217. Mental disorder of attorney" on p. 131:

> Relief from summary judgment is warranted under Rule 60(b)(6) if movant's allegation is true that their attorney's failure to oppose motion for summary judgment was due to mental disorder (drinking problem of I. I. Sikorsky, Jr., Esq.) which caused attorney to neglect his duties and to mislead his clients. United States v. Cirami (1977, CA 2 NY) 563 F2d 26, 77-2 USTC Sec. 9632 24 FR Serv 2d 205, 40 AFTR 2d 77-5677, on remand (ED NY) 92 FRD 483.

Likewise highly related/contiguous is "221. Other particular circumstances" on pp. 132-133:

> Relief from foreclosure of home is warranted under Rule 60(b)(6) where homeowners are entitled as of right under state law to

> homestead exemption which they did not waive. United States v. McDonald (1980, ND Ill) 86 FRD 204, 30 FR Serv 2d 1088. Defendant in Chapter 11 bankruptcy is entitled to relief under Rule 60(b)(6) where there is substantial sum in controversy, defendant was diligent in seeking relief, and plaintiff was aware of defendant's intention to interpose defense. Re Ireco Industries, Inc. (1979, BC DC Or) 2 BR 76, 22 CBC 659.
>
> (emphasis added)

In the instant cases "217. Mental Disorder of attorney" is contiguous with "3. Neglect by Attorney" on pp. 139-141 and with "236. Medical or personal problems; drug or alcohol abuse":

> District Court properly granted relief under Rule 60(b)(6) from dismissal of plaintiff's suit for failure to prosecute, where plaintiff alleged that he had made numerous inquiries of his attorney concerning progress of suit but attorney refused to answer them and assured plaintiff that suit was proceeding, and such attorney indicated that he had been beset with severe personal problems during period of suit. L.P. Steuart, Inc. v. Matthews (1964) 117 App DC 279, 329 F2d 234, 8 FR Serv 2d 60b.31, Case 1...

"X. Fraud Upon The Court" is discussed on pp. 152-156 supra replete with numerous citations highly relevant to the instant cases(s):

> Rule 60(b) recognizes court's inherent power to grant relief from judgment where court has been subjected to fraud and fraud upon court is matter so grave that relief is afforded without regard to any time limitation. Great Coastal Express, Inc. v. International Brotherhood of Teamsters, etc. (1980, ED Va) 86 FRD 131, 110 BNA LRRM 2052, 29 FR Serv 2d 1181, remanded without op (CA 4 Va)...
>
> p. 152 (emphasis added)

Sec. X is inclusive of "256. Perjury or false statements":

> Where it has been shown that, after district court made its findings, conclusions, and entered injunction, crucial witness had committed perjury, district court commits reversible error in continuing to credit witness's testimony without inquiring into extent of perjury and granting new trial or other relief. Phillips v. Crown Cent. Petroleum Corp. (1977 CA 4)...
>
> p. 153 (emphasis added)

As Plaintiff has pleaded and proven both through submission of defendant-ordered videotapes of state-mandated arbitration hearings in 1988-1989 as well as voluminous other exhibits, perjury has been the modus operandi of Defendants in toto in their egregiously fraudulent attempt to 'paint' Plaintiff as either insubordinate or "permanently physically disabled." Ergo, a second citation from "256. Perjury or false statement" follows:

> Perjurious testimony suborned by party to litigation, affecting material matter, will, if established, support bill of review in equity when fraud had by this means been perpetrated on court. Jungersen v. Axel Bros., Inc. (1954, DC NY)121 F Supp 712, affd per curiam (CA 2 NY) 217 F 2d 646, 104 USPQ 39, cert den 349 US 940, 99 L Ed 1267, 75 S Ct 784, 105 USPQ 517, reh den 350 US 868, 100 L Ed 769, 76 S Ct 99....
>
> p. 153 (emphasis added)

Only by suppression/sequestering of Plaintiff's bona fide, irrefutable medical, academic, and instructional expertise exhibits from Court purview inclusive of the King Philip Middle School roster for 1987-1988 with Plaintiff's name lined out could Defendants''rush to summary judgment' succeed wrongly.

While pursuing graduate study at Dartmouth College in New Hampshire, Plaintiff learned that Attorney Sikorsky had been found guilty in Superior Court of "misuse of clients' funds." Whether or not he colluded with Defendants in this Plaintiff's first case she knows not. However, "261. Involvement of attorney" states as follows:

> While attorney should represent his client with singular loyalty, such loyalty does not demand that he act dishonestly or fraudulently; on contrary, attorney's loyalty to court, as officer thereof, demands integrity and honesty in dealing with court, and when he departs from such standards in conduct of case, he perpetrates fraud upon court. Kupferman v. Consolidated Research & Mfg. Corp. (1972 CA 2 NY) 459 F2d 1072, 16 FR Serv 2d 160, 19 ALR Fed 747.

This Court will, of course, recall Plaintiff's December 7, 1991 letter addressed to Judge Dorsey and his 12/18/91 order granting appointment of counsel. (appended hereto) Plaintiff vividly recalls Mr. Sikorsky's words as we exited Hartford District Court following a court conference with said Judge, "I don't mind losing to Sue Krell." (The latter was Defendant Board's attorney.)

> It has long been held that equitable relief from final judgment will be granted where attorney fraudulently, or without authority, assumes to represent party and connives at his defeat, or where attorney, regularly employed, corruptly sells out his client's interest to the other side; where judgment is obtained in this manner, party, through no fault of his own, has no opportunity to present otherwise meritorious claim or defense. Bizzell v. Hemingway (1977, CA 4 NC) 548 F2d 505....
>
> p. 156 (emphasis added)
>
> If attorney was implicated in fabrication of evidence by party, such implication could constitute fraud upon court. United States v. International Tel. and Tel. Corp. (1972, DC Conn) 349 F Supp 22, 1972 CCH Trade Cases Sec. 74152, 16 FR Serv 2d 497, affd without op 410 US 919, 35 L Ed 2d 582, 93 S Ct 1363, 1973-1 CCH Trade Cases Sec. 74372....
>
> p. 156 (emphasis added)

This concludes arguments gleaned from USCS Lawyers' Edition Rules of Civil Procedure, Rules 60-End, 1987. The Court will recall that the last day Plaintiff was permitted to teach in Defendants' employ was March 5, 1987. The remaining pages of Exhibit 2, "Annotation" Construction and Application of Rule 60(b)(6) of Federal Rules of Civil Procedure Authorizing Relief From Final Judgment Or Order For "Any Other Reason" are dated 1973. Pro se Plaintiff knows not whether they are relevant to this Motion so will highlight just one citation:

> ...plaintiff's new counsel filed a "Motion To Revive and Reinstate the Entire Cause of Action Herein," as against all defendants, not just the doctor, and appealed the District Court's action denying their Motion to Revive. The Court of Appeals remanded the cause to the District Court for reconsideration of this motion, with the direction that the action taken by the District Court be accompanied by an exposition of the reason therefor, saying that the trial court might properly entertain such a motion pursuant to Rule 60(b) but that the record was devoid of any explanation as to the grounds on which the District Court acted, and that the only reason the plaintiffs were out of court was because of the agreed dismissal pur-

> suant to the abortive settlement effort of their former counsel. Although relief under Rule 6(b) is discretionary, the court said, the liberal spirit of the rule, together with the basic policy favoring resolution of litigation on the merits, required it to review closely the exercise of that discretion in cases such as the instant one where denial of the motion had precluded consideration of the merits of the controversy....
>
> Spann v. Commissioner of the District of Columbia (1970) 143 App DC 300, 443 F2d 715
>
> 15 ALR Fed 193, pp. 257-258
>
> (emphasis added)

For all the prima facie legal and bona fide factual grounds of an exceptional nature pleaded herein and in the January 19, 2006 "Motion to Reopen and for Relief from Judgment" Plaintiff's totality of meritorious claims of Defendants' fraudulent constructive discharge of the former's tenured-teaching-contract merit long overdue judicial relief.

Respectfully submitted,

Suzanne Mersereau Searles

RECEIVED
DEC

U.S. DISTRICT COURT
HARTFORD, CT

FILED
DEC 19 9 45 AM '91
CLERK
U.S. DISTRICT COURT
HARTFORD, CONN

36 West Wheelock Street, Ap
Hanover, New Hampshire 037
December 7, 1991

2:90-CV 606 PCD

Judge Peter C. Dorsey
United States District Court
Main Street
Hartford, Connecticut 06106

Dear Judge Dorsey:

The reason I am writing to you on this day is, very simply stated, a question of survival. Facing foreclosure on yet another small home in Avon, Connecticut, and lacking funds with whi to obtain even minimal 'room and board' elsewhere, I rented the home to a young couple for one year and re-enrolled at Dartmouth College in the same academic program which I commenced summer term 1987, after losing a home in May 1987, two months after West Hartford Public Schools' administrators evicted me from my rightfu teaching position at King Philip Middle School. I no longer receive the "public school teacher" scholarship awarded me by Dartmouth in 1987 but qualify for the maximum in federal student loans.

I have telephoned Igor I. Sikorsky's office many times this fall to inquire the status of both my Superior Court and U.S. Federal Court claims against West Hartford Public Schools and thei to state it euphemistically, prevaricative administrators and medical witnesses. Igor's secretaries, legal interns, and new wife have all assured me that he would return my calls and forward to me the Board's attorney's motions to dismiss. To this date, I have received one return call from Mr. Sikorsky but no documents

Thus my request of you is as follows: when I first filed my federal complaint in July 1990, you very kindly waived all filing fees and further stated that, should it become necessary, you woul secure counsel for me. Filing in forma pauperis pro se appears, at this time, to be my only recourse to human survival.

12/18/91: Treating this letter as a motion for appointment of counsel it is granted. The pro se law clerk shall make diligent efforts to obtain counsel for plaintiff in this case. SO ORDERED.

[signature]
Peter C. Dorsey, USDJ

Thus, I request of you legal counsel to competently and judiciously represent me in my four and one-half year 'battle' to mandate West Hartford to honor the letter of May 22, 1987, authored by then Director of Personnel, James J. Moore, to send to me my tenured teacher contract and notification of what school I would be assigned to for September 1987.

As my many federal exhibits authored by <u>competent</u> neurologists, neuropsychologists, internists, and psychiatrists have stated, I have completely recovered from 1) the ruptured left middle cerebral artery aneurysm of June 21, 1982, which rendered me comatose for nine (9) days, and 2) the neurosurgical procedure of July 1984 to excise a right middle cerebral artery aneurysm before it would rupture.

I paid the law firm of Bloom and Elbaum over $2000. in June 1987 to regain for me the promised continuation of my tenured teacher contrac and $12,500. in September 1990 through July 1991 to Mr. Sikorsky. Said monies were taken from what would have been my public school teacher pension had I been allowed to teach.until my attainment of retirement.

I have also enclosed for your kind perusal documents citing the many requests for delay granted by the arbitration tribunal to the Board's attorney; the tribunal would not honor one of my requests for the admission of new evidence. Hearings began in June 1988 and conclude in May 1989; the tribunal did not render its decision until July 23, 199 One week later, to the day, the Board of Education, in "special session,' terminated my twenty-year, tenured teacher contract in spite of my union Vice-President's request for the admission of new evidence gathered in the fourteen-month hiatus between the last hearing and the (erroneous) decision of the tribunal. Also enclosed is my letter of February 1, 1991, Executive Director of Connecticut Education Associatio being the recipient. There I state the truth of the facts re- CEA's legal counsel dropping my case before the receipt of the tribunal 's decision. By the way, never did said counsel consult me re- grant of requests for delay by either Susan Krell, Esq. or tribunal requests for more time.

I await a reply at your earliest convenience.

Very truly yours,

Suzanne M. Searles

Suzanne Mersereau Searles

N.B. I am about to lose my leased automobile in that I can no longer make lease payments. Where I will reside when that happens I have no idea as all pension monies are gone, and the long-term disabilit company has threateneed to stop making payments as they, too, know I am in no way disabled!

CERTIFICATION

Plaintiff hereby certifies that a copy of this Motion inclusive of nine exhibits was this day, May 22, 2006, either hand-delivered or mailed prepaid to the following:

Jonathan C. Sterling, Esq.
Jorden Burt, LLP
175 Powder Forest Drive, Suite 201
Simsbury, CT 06089

Nicole Dorman, Esq.
Karsten and Dorman
29 South Main Street
West Hartford, CT 06107

Rosenberg and Rosenberg
920 Farmington Avenue
West Hartford, CT 06107

Peter R. Blum, Esq.
1 Linden Place, Apt. 307
Hartford, CT 06106

Martin A. Gould, Esq.
Gould, Killian, and Wynne
280 Trumbull Street
Hartford, CT 06103

Timothy McNamara, Esq.
102 Oak Street
Hartford, CT 06106

Edward J. Fredericks, M.D.
85 Seymour Street
Hartford, CT 06103

Igor I. Sikorsky, Esq.
121 Perry Street
Hartford, CT 06085

Hugh Barber, Esq.
Office of the Attorney General
55 Elm Street
Hartford, CT 06106

CT Appellate Court
Clerk's Office - AC 26767
231 Capitol Avenue
Hartford, CT 06106

Hon. Gov. M. Jodi Rell
State Capitol Building
210 Capitol Avenue
Hartford, CT 06106

Paul E. Mersereau, Esq.
Drew and Mersereau, LLC
47 West Main Street
Avon, CT 06001

Suzanne Mersereau Searles,
pro se ifp