UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ADDENDUM TO
MOTION FOR RECONSIDERATION/MOTION FOR INDEPENDENT ACTION
INCLUSIVE OF NINE EXHIBITS

| | |
|---|---|
| SUZANNE MERSEREAU SEARLES, Plaintiff pro se in forma pauperis | CIVIL CASE NUMBERS: |
| | 2:90 cv 626 (PCD) |
| v. | 3:97 cv 2601 (PCD) |
| WEST HARTFORD BOARD OF EDUCATION, ET AL., Defendants | 3:00 cv 1115 (PCD) |
| | JUNE 26, 2006 |

Four days ago the United States Supreme Court more definitively defined the type of retaliation prohibited by Title VII of the Civil Rights Act of 1964, as amended, in said Court's unanimous ruling for Defendant White in <u>Burlington Northern and Santa Fe Railway Co. v. White</u>, No. 05-259, decided June 22, 2006. Justice Breyer delivered the opinion of the Court as follows:

> Title VII of the Civil Rights Act of 1964 forbids employment discrimination against 'any individual' based on that individual's 'race, color, religion, sex, or national origin.' Pub. L. 88-352, Sec. 704, 78 Stat. 257, as amended, 42 U.S.C. Sec. 2000e-2(a). A separate section of the Act-its anti-retaliation provision - forbids an employer from 'discriminating against' an employee or job applicant because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation. Sec. 2000e-3(a)...We conclude that the anti-retaliation provision does not confine the actions and harms it forbids to those that are related to employment or occur in the workplace. We also conclude that the provision covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant. In the present context that means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination....

-1-

This Court will well recall then Superintendent of West Hartford Public Schools Peter Relic's words to Plaintiff on November 19, 1986 in the former's office: "Because you filed charges with CT Commission on Human Rights and Opportunities/EEOC, you have placed us in an adversarial position. I will see to it that your tenured teaching contract with us be terminated." Plaintiff had filed two such charges previous to 11-19-86.

The two U.S. Department of Justice, Civil Rights Division, Employment Litigation Section right-to-sue letters dated October 20, 2000, were received certified mail by this Court's Clerk on "October 25, 1990":

> Re: EEOC Charges Against West Hartford
> Board of Education, et al. No. 16AA01228.

Said letters confirmed Plaintiff's right to institute a civil action under the following:

> Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq...
> Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. 12111, et seq., and Title V, Section 503 of the Act, 42 U.S.C. 12203....

Moreover, the _bona fide_ wording of both ADA citations contains specific prohibition against employers/defendants' use of "retaliation," "coercion," and "intimidation." October 2000, of course, fell subsequent to the physical and verbal assault upon Plaintiff by Defendant Schulman on December 14, 1994 and three (3) surgeries necessitated by the injuries inflicted.

Eight years ago today, June 26, 1998, two United States Supreme Court Cases, _Burlington Industries, Inc. v. Ellerth_, No. 97-569, and _Faragher v. City of Boca Raton_, No. 97-282, were decided in favor of employees Ellerth and Faragher for reasons of _constructive discharge/coercion_, _retaliation_, and _intimidation/harassment of a sexual nature in the Ellerth case and of creation of a hostile work environment in the Faragher case_. Both women/respondents won remand.

In addition to all exhibits, factual, and legal arguments placed before this District Court in Case Numbers 2:90 cv 626, 3:97 cv 2601, and 3:00 cv 1115; Exhibit 2, "Claimant's Brief" pp. 1-11 accurately documents the lengthy enumeration of complaints in this Plaintiff's burden of establishing a _prima facie_ case of _pretextual discrimination_ and _resultant retaliation_ both in the workplace and in refusal to re-employ. Therein, Title VII

Sections 703 and 704 unlawful employment practices of an employer are enumerated just as they are by Justices Breyer and Alito in <u>Burlington Northern and Santa Fe Railway Co. v. White</u>, USSC No. 05-259, <u>supra</u>. Similar rulings may be found in <u>Robinson v. Shell Oil Company</u>, USSC No. 95-1376; <u>United States v. Karahalias</u>, 205 F.2d 331-335 USCA 2 (1953); (Please see pp. 1-2 of this Plaintiff's "Motion To Reopen And For Relief From Judgment" dated 1-19-06) and <u>Price Waterhouse v. Hopkins</u> 490 U.S. 228, 244 (1989) (plurality opinion):

> No one doubts that the term 'discriminate against' refers to distinctions or differences in treatment that injure protected individuals...
>
> <u>Burlington Northern and Santa Fe Railway Co. v. White</u>, <u>supra</u>, p. 3.

Justice Breyer continues:

> But different Circuits have come to different conclusions about whether the challenged action has to be employment or workplace related and about how harmful that action must be to constitute retaliation...
>
> <u>Burlington</u>, p. 3

> We granted certiorari to resolve this disagreement. To do so requires us to decide whether Title VII's anti-retaliation provision forbids only those employer actions and resulting harms that are related to employment or the workplace. And we must characterize how harmful an act of retaliatory discrimination must be in order to fall within the provision's scope....
>
> <u>Burlington</u>, p. 4

As argued factually and legally in this Plaintiff's three afore-documented federal cases, not only was she constructively discharged from Defendants' employment of nineteen years and six months but was also physically and verbally assaulted by school administrator Schulman on 12-14-94 in a West Hartford grocery store. "Resulting harms" necessitated a third corrective brain surgery in addition to thoracic and abdominal surgeries to the injured former teacher. The instant U.S. Supreme Court opinion would appear to mandate consolidation/joinder of this Plaintiff's three cases for the following reasons:

> <u>The language of the substantive provision differs from that of the anti-retaliation provision</u> in important ways. <u>Section 703 (a)</u> sets forth Title VII's core anti-discrimination provision in the following terms: '<u>It shall be unlawful for an employer-(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate</u> against any individual <u>with respect to his compensation, terms, conditions, or privileges of employment</u>...
> <u>Section 704(a)</u> sets forth Title VII's anti-retaliation provision in the following terms: '<u>It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment...because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter</u>.' Sec. 2000e-3(a)(emphasis added)
> ...
>
> Burlington, supra, p. 4<br>(emphasis added)
>
> <u>The underscored words in the substantive provision</u>- '<u>hire</u>,' '<u>discharge</u>,' '<u>compensation, terms, conditions, or privileges of employment</u>,' '<u>employment opportunities</u>,' <u>and 'status as an employee</u>' - <u>explicitly limit the scope of that provision to actions that affect employment or alter the conditions of the workplace. No such limiting words appear in the anti-retaliation provision. Given these linguistic differences, the question here is not whether identical or similar words should be read in pari materia to mean the same thing</u>...<u>Rather, the question is whether Congress intended its different words to make a legal difference. There is strong reason to believe that Congress intended the differences that its language suggests, for the two provisions differ not only in language but in purpose as well</u>...<u>The substantive provision seeks to prevent injury to individuals based on who they are, i.e. their status. The anti-retaliation provision seeks to prevent harm to individuals based on what they do, i.e. their conduct</u>...
>
> Burlington, supra,<br>pp. 4-5 (emphasis added)

An employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm outside the workplace. See, e.g., Rochon v. Gonzales, 438 F.3d at 1213. (FBI retaliation against employee 'took the form of the FBI'S refusal...to investigate death threats a federal prisoner

>  made against (the agent) and his wife');
>  <u>Berry</u> v. <u>Stevinson Chevrolet</u>, 74 F.3d
>  980, 984, 986 (CA10 1996)(finding action-
>  able retaliation where employer filed
>  false criminal charges against former em-
>  ployee who complained about discrimination).
>  <u>Burlington</u>, <u>supra</u>,<br>p. 5

Not only did Defendant Schulman cause Plaintiff "harm outside the workplace;" Schulman also "filed false criminal charges against former employee" with the West Hartford police officer dispatched to the scene of Schulman's physical assault/battery of former employee Searles by the latter's 911 call to said police. Yes, indeed, Plaintiff's three cases are inextricably intertwined both factually and legally, and, as such, serve as a paradigm of this <u>Burlington</u> v. <u>White</u> federal case. Not even West Hartford Police Chief James Strillacci would arrest Natalie Schulman when this victim phoned the Chief. He instead stated, "We'll let the courts take care of this situation." In like disregard of the law, Corporation Counsel Marjorie Wilder offered Plaintiff/victim fifteen thousand dollars ($15,000.) if the latter would drop her federal lawsuits against Town of West Hartford's Board of Education inclusive of the aforementionned assault case. Said bribe was offered just outside Superior Court of Hartford just after a chambers' conference with Senior Judge Jerry Wagner. Searles was denied appointment of <u>pro bono</u> counsel by Superior Court; Judge Marshall Berger threw out/disposed of this assault/battery case for failure to prosecute. Justice Breyer continues on p. 7: "<u>The scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm</u>. We therefore reject the standards applied in the Court of Appeals that have treated the anti-retaliatory provision as forbidding the same conduct prohibited by the anti-discrimination provision and that have limited actionable retaliation to so-called '<u>ultimate employment decisions</u>.' See <u>supra</u>, at 5..." In this Plaintiff's instant Motions to Reopen and For Relief from Judgment of January 19,2006 and for Reconsideration/ and for Independent Action of May 22, 2006 she has definitively met the standards outlined by Justice Breyer for both substantive (loss of tenured teaching contract and pension) and anti-retaliation provisions (employer-condoned battery resultant in a third brain injury so grave as to render the victim permanently paralyzed in third cranial nerve function).

> We refer to <u>reactions of a reasonable employee</u> <u>because</u> we believe that <u>the provision's standard for judging harm must be objective</u>. It avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings. We have emphasized the need for objective standards in other Title VII contexts, and those same concerns animate our decision here. See, e.g., <u>Suders</u>, 542 U.S. at 141 (<u>constructive discharge doctrine</u>); <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 21 (1993)(<u>hostile work environment doctrine</u>)...
>
> <u>Ibid</u>., p. 8<br>(emphasis added)

As Plaintiff in this District Court Case Numbers 2:90 cv 626, 3:97 cv 2601, and 3:00 cv 1115 has pleaded <u>objectively</u>, not "frivolously" as defendants fraudulently rebut, for sixteen years and counting replete with <u>prima facie</u> legal and factual exhibits, she returned to her tenured teaching in Defendants' schools only to be assigned to a foreign-to-her middle school assignment and not to her previous-to-two-corrective-brain-surgeries position as a full-time teacher of high school English. Hence, her qualification for EEOC/Department of Justice intervention because of a previous history of disability as defined under both the Rehabilitation Act of 1973 "reasonable accommodation" proviso and the same under the Americans With Disabilities Act. (ADA) Plaintiff <u>pro se in forma pauperis</u> again refers the Court to the multitude of professional teaching expertise, medical, and Dartmouth College academic exhibits placed before said Court during the past sixteen years inclusive of the May 22, 2006 Exhibits three through nine:

> ...In no way are we saying this is not <u>an excellent teacher</u>...It does not mean she is not <u>a highly qualified teacher</u>... <u>It does not mean that her interest in teaching at the high school will be ignored. It will not. It must not</u>... I do not know for a fact but we have here <u>a person of considerable integrity</u>... <u>If there is anything for which this party might hold us culpable in the future it would be were we to ignore her interest when the opportunity presented itself</u>...
>
> -words of Assistant Superintendent of Schools Lloyd Calvert at conclusion of West Hartford Education Association (WHEA) July 21, 1986 grievance

> Finally, we note that contrary to the claim of the concurrence, this standard does <u>not</u> require a reviewing court or jury to consider "the nature of the discrimination that led to the filing of the charge." Post, at 6 (Alito, J. concurring in judgment). Rather, the standard is tied to the challenged retaliatory act, not the underlying conduct that forms the basis of the Title VII complaint. By focusing on the materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position, <u>we believe this standard will screen out trivial conduct while effectively capturing those acts that are likely to dissuade employees from complaining or assisting in complaints about discrimination</u>...
>
>       III
>
> Applying this standard to the facts of this case, <u>we believe that there was a sufficient evidentiary basis to support the jury's verdict on White's retaliation claim</u>. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150-151 (2000) <u>The jury found that two of Burlington's actions amounted to retaliation: the reassignment of White from forklift duty to standard track laborer tasks and the 37-day suspension without pay</u>...

Ibid., p. 8 (emphasis added)

Ibid., p. 8 (emphasis added)

In the instant case Plaintiff Searles had been promised by Director of Personnal Defendant Moore that were she to perform competently <u>for one year</u> in a middle school team teaching venue, she would be reassigned to a high school pre-surgical assignment. As stated <u>supra</u> on p. 6 and throughout all three cases before this court, broken promises abounded. Thus, she returned to the middle school for a second year only to be harrassed, cajoled, intimidated, and coerced - constructively discharged - on March 6, 1987. "Suspension without pay" has now run nineteen years and counting. Retaliatory tactics have gone so far as to alert other local school districts that the latter should not hire Plaintiff for either a full-time teaching position or even as a substitute instructor. Likewise fraudulently and illegally negated have been Plaintiff's applications for reinstatement with West Hartford.

> The District Court instructed the jury to determine whether respondent "suffered a materially adverse change in the terms or conditions of her employment," App. 63, and the Sixth Circuit upheld the jury's finding based on that same stringent inter-

-7-

> pretation of the anti-retaliation pro-
> vision (the interpretation that limits
> Sec. 704 to the same employment-related
> conduct forbidden by Sec. 703). Our
> holding today makes clear that the jury
> was not required to find that the chal-
> lenged actions were related to the terms
> or conditions of employment. And insofar
> as the jury also found that the actions
> were "materially adverse," its findings
> are adequately supported... 
> Ibid., p. 8

> Common sense suggests that one good way
> to discourage an employee such as White
> from bringing discrimination charges
> would be to insist that she spend more
> time performing the more arduous duties
> and less time performing those that are
> easier or more agreeable...
> Ibid., p. 9

Plaintiff Searles had been assigned four high school English classes, one extracurricular period assignment daily, and home-room supervision prior to the ruptured cerebral aneurysm on June 21, 1982. Returning from two neurosurgical brain aneurysms' excision in September 1985, she was assigned five middle school English classes daily, one full-period team meeting daily, cafeteria duty daily, and homeroom supervision daily. Never in her career had she been assigned to a middle school with foreign-to-her curriculum, faculty, and administration.

> That is presumably why the EEOC has
> consistently found "retaliatory work
> assignments" to be a classic and 'wide-
> ly recognized' example of 'forbidden re-
> taliation.' 2 EEOC 1991 Manual Sec. 614.
> 7, pp. 614-31 to 614-32; see also 1972
> Reference Manual Sec. 495.2 (noting Com-
> mission decision involving an employer's
> ordering an employee 'to do an unpleasant
> work assignment in retaliation' for filing a
> racial discrimination complaint); EEOC Dec.
> Dec. No. 74-77, 1974 WL 3847, ('Employers
> have been enjoined ' under Title VII 'from
> imposing unpleasant work assignments upon
> an employee for filing charges').
> Ibid., p. 9, (emphasis added)

The Court will recall Plaintiff's WHEA grievance of July 1975 against West Hartford Board of Education for assignment to a junior high school in spite of her seniority over almost all other high school teachers of English. (See entire pagination of January 2006 "Motion To Reopen And For Relief From Judgment.") She was assigned five classes daily in five different classrooms daily on two different floors. Not one room was an English class-room. Retaliation, indeed!

-8-

    The aforementionned 1975 first of three involuntary transfers from the very successful teaching of high school English to an "unpleasant work assignment(s)" with much "more arduous duties" as just outlined, signaled the advent of the excruciating headaches resultant in an unpaid medical leave spanning academic year 1978-1979. As stated previously, not until Sept. 1979, with her teachers' union (WHEA) backing, was Plaintiff rightfully reassigned to her high school position where she had not only co-authored the curriculum but also held seniority over thirty-one (31) other teachers of English in West Hartford Public Schools. Here she taught full-time until the next-to-last school day of 1982 when a left middle cerebral artery aneurysm ruptured in her brain rendering her comotose for nine days until neurosurgical intervention. At that time a second cerebral aneurysm of the right middle cerebral artery was detected but could not be excised until July 1984 or until the patient had regained her ability to walk, speak, and regain short-term memory losses related to the nine days of comotose hemorrhaging described above.

    Numerous physicians in Boston, Hartford County, and at Dartmouth-Hitchcock Medical Center in New Hampshire, the site of the 1984 surgery, attribute the stress-induced aneurysms' formation to the physically and emotionally draining hardships suffered during completion of the arduous, unpleasant assignment to a junior high school during academic years 1975-6, 1976-?, and 1977-8 as described <u>supra</u>. Coupled with the physical draining of transporting English teaching materials inclusive of dictionaries up and down two flights of stairs to five different classrooms daily, Defendant Board of Education issued press releases - see second set of pages 5 through 7 in the instant "Motion To Reopen And For Relief From Judgment" - discriminating and retaliatory in nature. For example, on pp. 5-7 are several excerpts from <u>The Hartford Courant</u> of July and August 1975 noting, <u>inter alia</u>, that this teacher's grievance was but one of five that had gone "all the way to the board...They represent the first time ever that grievances have gone that far..." Retaliation reared its 'ugly head' repeatedly as follows:

> ...WHEA president, contends the board wanted to embarrass the teachers and discourage others from bringing grievances. He said the disclosure reflected badly on the teachers because of some critical comments

> about them made by Asst. Supt. Donald Hardy in a <u>Courant</u> article two weeks before...LaCroix said he wants school officials to publicly apologize for the 'error,' to clarify in public that the teachers discussed...'are qualified'...'and to promise not to do that again....'
>
> The <u>West Hartford News</u>,<br>August 5, 1975

> ...The two transfer grievances the board will hear this week involve Conard (HS) teachers who have been reassigned to junior high schools. LaCroix contends both cases are an example of age and sex discrimination in reverse because the board wants to keep a balance of teachers at various schools...
>
> The <u>Hartford Courant</u>,<br>July 20, 1975

The instant Plaintiff was forty years old on February 11, 1975. No public or other apology was ever forthcoming from either Mr. Hardy or from the Defendant Board of Education.

> ...The English teacher who was transferred had taught 11 years at the junior high level before going to the senior high when ninth graders were moved there temporarily two years ago. Hardy said he considered her not prepared to teach the required courses if she were to remain at the senior high without the ninth grades...
>
> <u>Ibid.</u>, July 20, 1975

Justice Breyer continues as follows:

> To be sure, reassignment of job duties is not automatically actionable. <u>Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and</u> 'should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances.' Oncale, 523 U.S., at 81. But here, the jury had before it considerable evidence that the track laborer duties were 'by all accounts more arduous and dirtier'; that <u>the forklift operator position was objectively considered a better job</u> and <u>the male employees resented White for occupying it.</u>' 364 F.3d, at 803...<u>Based on this record, a jury could reasonably conclude that the reassignment of responsibilities would have been materially adverse to a reasonable employee</u>...
>
> Burlington, supra,<br>p. 9<br>(emphasis added)

-10-

The instant Plaintiff, from eleven years of previous junior high school teaching experience to her requested transfer to Conard High School in 1973, well knew that high school instruction of English was far more attractive and less arduous than dealing with five classes daily of twelve to fourteen-year-olds. Moreover, the intellectual curiosity of high school college-bound students as well as the English curriculum itself comprise a far more attractive instructional setting for the dedicated teacher. (Please see Exhibits three (3) through nine (9) of this "Motion For Reconsideration/Motion For Independent Action Inclusive Of Nine Exhibits").

Justice Breyer continues:

> ...After all, throughout its history, Title VII has provided for injunctions to 'bar like discrimination in the future,' Albemarle Paper Co. v. Moody, 422 U.S. 405, 418 (1975)...an important form of relief. Pub. L. 88-352, Sec. 706(g), 78 Stat. 261, as amended, 42 U.S.C. Sec. 2000e-5(g).
>
> Burlington, supra, p. 9

Before proceeding further with both the factual and legal analogies between the Burlington v. White case and the gravamen of this Plaintiff's three tightly-intertwined federal court cases, she feels compelled to state the obvious modus operandi of Defendant Board of Education: why not assign the returning teacher to the identical school edifice where, years earlier, she had been involuntarily assigned and subjected to inhumane, retaliatory working conditions which culminated in the emergence of two life-threatening brain aneurysms?  Secondly, why not effectuate pretextual 'constructive discharge' by again making her life miserable by means of both verbal harassment and a pretextual letter of reprimand?

> And we have no reason to believe that a court could not have issued an injunction where an employer suspended an employee for retaliatory purposes, even if that employer later provided back pay. In any event, Congress amended Title VII in 1991 to permit victims of intentional discrimination to recover compensatory (as White received here) and punitive damages, concluding that the additional remedies were necessary to 'help make the victim whole.' West v. Gibson, 527 U.S. 212,

-11-

> 219 (1999)(quoting H.R. Rep. No. 102-40, pt. 1, pp. 64-65 (1991); see 42 U.S.C. Secs.1981a(a)(1), (b). <u>We would undermine the significance of that congressional judgment were we to conclude that employers could avoid liability in these circumstances</u>...
>
> Burlington, supra, p. 9 (emphasis added)
>
> <u>Neither do we find convincing any claim of insufficient evidence.</u> White did receive back pay. But <u>White and her family had to live for 37 days without income. They did not know during that time whether or when White could return to work. Many reasonable employees would find a month without a paycheck to be a serious hardship. And White described to the jury the physical and emotional hardship that 37 days of having "no income, no money" caused.</u> 1 Tr. 154...
>
> Burlingon, supra, pp. 9-10 (emphasis added)

At this juncture <u>pro se in forma pauperis</u> Plaintiff must remind this Court that she has been denied the promised reinstatement and reimbursement <u>per</u> CT General Statute Sec. 31-290a for nineteen years and counting since administrative banishment from continuation of her career on March 6, 1987 in spite of the following administrative promises: 1) Assistant Superintendent Calvert's words at the conclusion of the 1986 grievance, 2) Director of Personnel Moore's assurances stated at the conclusion of the 1-19-87 'conference' in his office, and 3) the faculty roster of King Philip Middle School for 1987-88 with Searles's name lined out. Much more precise wording of the foregoing may be found in the multitude of federal case exhibits submitted by Plaintiff but surreptitiously removed by opposing counsel before moving for summary judgment. Coupled with the foregoing were Assailant Schulman's words to the West Hartford police officer called to the scene of her attack upon Searles: 4) that Mrs. Searles had entered the middle school in January 1991, hurled keys at a school secretary, and caused an uproar in the auditorium upsetting faculty and students. Schulman continued the foregoing slander by stating that Searles had been warned that should she step foot on any West Hartford school's grounds, she would be arrested. As noted <u>supra</u>, the police did absolutely nothing.

5) As stated earlier, Schulman's attorney and attorneys for River Mead Homeowners' Association admittedly colluded to foreclose upon Plaintiff's home in spite of the latter's hand-delivering a check for nine hundred dollars to the offices of Rosenberg and Rosenberg, P.C. as told to do by Judge Wagner's son-in-law, also an attorney, after speaking with Mr. Howard Rosenberg on the phone. Plaintiff drove to the West Hartford Center office, presented the check to Howard, and was refused receipt of same. 5) As noted earlier, foreclosure transpired as Searles lay in a Simsbury nursing facility, Governor's House, recovering from the brain surgery necessitated by Schulman's battery.

> A reasonable employee facing the choice between retaining her job (and paycheck) and filing a discrimination complaint might well choose the former. _That is to say, an indefinite suspension without pay could well act as a deterrent, even if the suspended employee eventually received back pay._ Cf. _Mitchell_, 361 U.S., at 292 ('It needs no argument to show that _fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions_'). _Thus, the jury's conclusion that the 37-day suspension without pay was materially adverse was a reasonable one_....
>
> IV
>
> _For these reasons, the judgment of the Court of Appeals is affirmed. It is so ordered_....
>
> Ibid., p. 10
> (emphasis added)

One further reiteration of retaliation, the second of three involuntary transfers, must be noted. Had Plaintiff Searles received accurate medical diagnosis as to the genesis of the aforementionned headaches throughout academic years 1975-1979 prior to the rupture and subsequent hemorrhaging of June 21, 1982, she had been assigned to Hall High School to teach juniors and seniors during 1978-1979 to fill that instructional position vacated by another English teacher who had taken the assignment to grievance. Said transfer stood in definitive contradiction to administrative statements to the press on July 20, 1975 that the former "... considered her not prepared to teach the required courses if she were to remain at the senior high without the ninth grades..." (supra, p. 10) Plaintiff pro se rests her latest plea for justice.

Respectfully Submitted,

*[signature: Suzanne M. Searles]*

Suzanne Mersereau Searles
45 Whispering Pines Road
Avon, CT06001
860-674-0617

Respectfully Submitted,

_Suzanne M. Searles_
Suzanne Mersereau Searles
45 Whispering Pines Road
Avon, CT  06001
860-674-0617

-14-

## CERTIFICATION

Plaintiff hereby certifies that a copy of this Addendum To Motion For Reconsideration/Motion For Independent Action Inclusive Of Nine Exhibits was this day, 30 June 2006, either mailed prepaid or hand-delivered to the following:

Jonathan C. Sterling, Esq.
Jorden Burt, LLP
175 Powder Forest Drive, Suite 201
Simsbury, CT 06089

Nicole Dorman, Esq.
Karsten and Dorman
29 South Main Street
West Hartford, CT 06107

Rosenberg and Rosenberg
920 Farmington Avenue
West Hartford, CT 06107

Peter R. Blum, Esq.
1 Linden Place, Apt. 307
Hartford, CT 06106

Martin A. Gould, Esq.
Gould, Killian, and Wynne
280 Trumbull Street
Hartford, CT 06103

Timothy McNamara, Esq.
102 Oak Street
Hartford, CT 06106

Edward J. Fredericks, M.D.
85 Seymour Street
Hartford, CT 06103

Igor I. Sikorsky, Jr., Esq.
121 Perry Street
Unionville, CT 06085

Hugh Barber, Esq.
Office of the Attorney General
55 Elm Street
Hartford, CT 06106

CT Appellate Court
Clerk's Office-AC 26767
231 Capitol Avenue
Hartford, CT 06106

Hon. Gov. M. Jodi Rell
State Capitol Building-
Executive Offices
210 Capitol Avenue
Hartford, CT 06106

Paul E. Mersereau, Esq.
Drew and Mersereau LLC
47 West Main Street
Avon, CT 06001

Respectfully submitted,

_Suzanne M. Searles_

Suzanne M. Searles, pro se ifp Plaintiff